UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MARK NOLAN,

          Petitioner,          Case No. 2:18-cv-113

v.                                 Honorable Gordon J. Quist

MELINDA BRAMAN,

          Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Mark Nolan is incarcerated with the Michigan Department of Corrections at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. Following a two-day jury trial in the Chippewa County Circuit Court, Petitioner was convicted of possession of heroin, possession of methadone, maintaining a drug house, and possession of a controlled substance in jail. On April 14, 2015, the court sentenced Petitioner as a fourth habitual offender, to respective concurrent prison terms of six years to 60 years, three years and 10 months to 15 years, three years and 10 months to 15 years, and two years and 10 months to 60 years.

On July 16, 2018, Petitioner filed his habeas corpus petition.

The petition raises four grounds for relief, as follows:

    1. The evidence was insufficient to support Petitioner's convictions violating his due process rights.

2. The trial court reversibly erred by denying Petitioner's suppression motion that the evidence was obtained through an unreasonable search and seizure.

3. The pills obtained were not proven beyond a reasonable doubt to be the controlled substance Methadone.

4. Detective Postma showed a disregard for the truth by omitting that he was not a part of the investigation, he lied about knowing the CI, he lied about information given in the past by the CI to him and Deputy Hering, and he lied about surveillance.

(Pet., ECF No. 1, PageID.6-10.)

Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are non-cognizable or meritless.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

The facts underlying Petitioner's conviction were set out by the Michigan Court of Appeals as follows:

> Following a confidential informant's (CI) two controlled purchases of suspected controlled substances from defendant; the police executed a warrant and searched the apartment where defendant was living, seizing a package of heroin. After his arrest, pills that were later determined to contain methadone were found in defendant's sock at the jail.

(Mich. Ct. App., ECF No. 9-15, PageID.668.) The jurors deliberated for about 90 minutes before finding Petitioner guilty of possession of heroin, possession of methadone, maintaining a drug house, and possession of a controlled substance in jail. (ECF No. 9-13, PageID.650-651.)

2

Petitioner, with the assistance of counsel, appealed his conviction. Petitioner filed two briefs. In the first brief, Petitioner raised two issues, the same issues he raises as habeas issues I and II. (ECF No. 9-15, PageID.705.) In Petitioner's second brief, a *pro per* supplemental brief, Petitioner raised, for the first time, the issues identified as habeas issues III and IV. (*Id.*, PageID.761.) Thereafter, by unpublished opinion issued October 18, 2016, the court of appeals denied relief, affirming the trial court with respect to all issues Petitioner raised. (*Id.*, PageID.673.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals. (ECF No. 9-16, PageID.770-798.) By order entered July 25, 2017, the supreme court denied leave to appeal because the court was "not persuaded that the questions presented should be reviewed." (*Id.*, PageID.769.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. Instead, he timely filed his habeas petition.

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on

4

a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia, Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo. Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Sufficiency of the Evidence

Petitioner contends the prosecutor failed to introduce sufficient evidence to support all four of his convictions, and specifically failed to prove beyond a reasonable doubt that the controlled substance found was Methadone. (Claims I and III) The Michigan Court of Appeals rejected Petitioner's claim raising sufficiency of the evidence, applying the following standard:

> We "review [] de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Taking the evidence in the light most favorable to the prosecutor,

> we conclude that a rational trier of fact could find defendant guilty beyond a reasonable doubt of all the offenses. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010).

(ECF No. 9-15, PageID.668.)

Although the court of appeals relied on state authority, the standard it applies is functionally identical to the federal habeas standard. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*;

7

second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The court of appeals concluded that the evidence was sufficient to support Petitioner's convictions for possession of heroin, possession of methadone, maintaining a drug house, and possession of a controlled substance in jail:

> To support a conviction for possession with intent to deliver less than 50 grams of a controlled substance—here, heroin—the prosecution must prove: "(1) that the recovered substance is [heroin], (2) that the [heroin] is in a mixture weighing less than fifty grams, (3) that [the] defendant was not authorized to possess the substance, and (4) that [the] defendant knowingly possessed the [controlled substance] with the intent to deliver." *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992). To constructively possess the controlled substance, the person must have the right to exercise control of the [controlled substance] and know that it was present. *Id.* at 520. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Id.* at 521. In other words, constructive possession of narcotics exists when the defendant has the right to exercise control over the narcotics and has knowledge of their presence. *People v Hardiman*, 466 Mich 417, 421 n 4; 646 NW2d 158 (2002).
>
> With regard to the first three elements of possession of heroin, Grayling Crime Laboratory forensic scientist Karen Brooks testified that the bag seized from defendant's apartment contained 8.4 grams of heroin, and there was no evidence that defendant was authorized to possess the substance. Defendant's argument that the fourth element was not proved beyond a reasonable doubt—that he knowingly possessed the heroin with intent to deliver— is without merit. The CI identified defendant as his source for heroin and as the person who sold him the drugs for both controlled purchases, the second purchase occurring in the apartment defendant shared with his mother and her boyfriend. The heroin was found in a duffle bag and in the same bedroom where

8

defendant's driver's license and a bill addressed to defendant were found. Under these facts, it was rational for the jury to find that defendant had the right to exercise control over the narcotics and had knowledge of their presence. *Id*. Chippewa County Sheriff's Department Detective Sergeant Greg Postma testified that in his experience as a police officer, 8.4 grams of heroin was too large a quantity for personal use. Specifically, he testified that the quantity involved could be broken up into 84 tenth-of-a-gram packets and sold as "points," which is sufficient to infer intent to deliver. *People v Abrego*, 72 Mich App 176, 181-182; 249 NW2d 345 (1976). We conclude that it was not irrational for the jury to reject testimony by one witness that the drugs belonged to a man only identified as "Buck," in favor of the evidence offered by police officers. *Wolfe, 440 Mich.,* at 519. We conclude that the totality of these circumstances allows a rational fact finder to conclude that defendant constructively possessed the heroin beyond a reasonable doubt.

The elements of maintaining a drug house are: "(1) the defendant kept or maintained a building or dwelling; (2) the building or dwelling was kept or maintained for using or selling drugs; (3) the defendant knew the building or dwelling was used for this purpose; and (4) the defendant had some general control over the building or dwelling. *People v Bartlett*, 231 Mich App 139, 153-154; 585 NW2d 341 (1998). A person must have "the ability to exercise control or management over the house." *Id*. 152. The phrase "keep or maintain" "implies usage with some degree of continuity that can be deduced by actual observation or repeated acts or circumstantial evidence[.]" *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007).

As stated earlier, the CI identified defendant as his source for heroin and identified defendant as the person who sold him the drugs for both controlled purchases, with the second purchase occurring in the apartment where defendant lived. The heroin was found in a duffle bag and in the same bedroom where defendant's driver's license and a bill addressed to defendant were found. It was thus rational for the jury to find that defendant had the right to exercise control over the narcotics and had knowledge of their presence. *See Bartlett*, 231 Mich App at 152 (holding that a defendant's general control, not supervisory control, over at least a portion of a dwelling and knowledge that drugs are kept or sold from the dwelling is sufficient to support the defendant's conviction of maintaining a drug house). There was testimony that the amount was too large for personal use and there was a scale found with the heroin. Although one witness for the defense testified that the bag belonged to a man only identified as Buck, the jury apparently did not find him

9

> credible, which is within its purview as the trier of fact, and is not a basis for challenging the sufficiency of the evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). The totality of these circumstances allows a rational fact-finder to conclude that defendant had general control over his bedroom and knowingly maintained a drug house in the apartment. MCL 333.7403(2)(a)(v) prohibits the possession of methadone, a schedule 2 controlled substance, MCL 333.7214(b). The elements of possession of less than 25 grams of methadone are: (1) the defendant knowingly or intentionally possessed a controlled substance, (2) the substance was methadone, and (3) the controlled substance weighed less than 25 grams.
>
> MCL 333.7403(2)(a)(v). The elements of possession of a controlled substance in jail are: (1) that the defendant was a prisoner who (2) possessed or controlled (3) a controlled substance. *People v Williams*, 294 Mich App 461, 470; 811 NW2d 88 (2011). Defendant asserts in both his principal brief on appeal and his pro se brief that there was insufficient evidence to support both offenses, arguing only that the prosecution failed to prove beyond a reasonable doubt that the pills contained methadone. We disagree. Brooks, who had 21 years of experience, identified the pills as methadone at trial. Although she did not perform a chemical analysis, she testified that she made the physical identification by viewing the markings on the pills and using an online database containing information on all pharmaceutical tablets, which indicated that tablets with those markings contained methadone. Brooks further testified that she identifies pills through the database "all the time." It was the trier of fact's role to determine the weight of the evidence and the credibility of Brooks. *Eisen*, 296 Mich App at 331. Her testimony was sufficient to establish that the pills recovered from defendant were a controlled substance for purposes of possession of methadone and possession of a controlled substance in a jail.

*People v. Nolan*, No. 326970, 2016 WL 6127675, at *1-3 (Mich. Ct. App. Oct. 18, 2016).

Petitioner contends that the evidence identified by the court of appeals is simply not credible enough to offer the certitude of guilt necessary to warrant conviction. (ECF No. 1, PageID.6.) Moreover, Petitioner contends that the court of

10

appeals analysis fails because it is based on false evidence submitted by state agents. (*Id.*)

Petitioner does not dispute that the record includes the evidence that the court of appeals found to be sufficient: a CI identified Petitioner as his source for heroin and as the person who sold him drugs, a duffel bag seized from Petitioner's bedroom contained 8.4 grams of heroin as identified by a forensic lab, the duffel bag was found in the same room as a scale alongside Petitioner's driver's license and a bill addressed to him, and pills found in Petitioner's sock contained methadone as identified by an expert. (ECF No. 9-15, PageID.669-670.) Petitioner claims, however, that the evidence does not support the inference that he is guilty.

Certainly, much of the evidence was circumstantial. However, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). "And juries are routinely instructed that '[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.'" *Id.* (alteration in original) (quoting 1A Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions: Criminal § 12.04 (5th ed. 2000)).

The court of appeals, considering the entire record, held that the identified facts support the reasonable inference that Petitioner possessed the heroin, had control over his own bedroom, and that the pills contained methadone. The jury would be free to draw that inference if it is a reasonable one. In *Coleman v. Johnson*,

566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id.* at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. The inference need not be compelled by those facts; it must simply be rational. *Id.* at 656. As a result, to succeed in his challenge, Petitioner must show that the identified inference is irrational.

Petitioner has not made that showing. Certainly, the inference singled out by the court of appeals-that Petitioner possessed the heroin, had control over his bedroom and knowingly maintained a drug house, and pills possessed by Petitioner contained methadone-could rationally flow from the totality of the underlying facts. His argument that other inferences might follow from the evidence-inferences that favor him – is immaterial. Petitioner has not identified any United States Supreme Court cases that resolves the issue differently on a set of materially indistinguishable facts. Moreover, he has failed to overcome the double deference owed to the state-court's application of the facts to the *Jackson* standard. *Tucker*, 541 F.3d at 656. Accordingly, Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence claim.

## IV.    Fourth Amendment Violation

Petitioner contends that drug evidence discovered by the officers should have been suppressed because it was obtained in violation of the Constitution. Petitioner argues: (1) that the search of his residence was invalid because it was based on an invalid affidavit not based on personal knowledge and not supported by probable cause; (2) the affidavit contained stale information and lacked a sufficient nexus

between the facts asserted and the place to be searched; and (3) the trial court erred by not suppressing the evidence.  (Claims II and IV)

Petitioner's Fourth Amendment claims are barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824.

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the

13

Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged facts showing that the state's mechanism has broken down. Rather, the record shows that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. The Michigan Court Appeals fully addressed these issues explaining:

> Next, defendant argues in his principal brief and his *pro se* brief that the search warrant was invalid on the basis that a sufficient nexus was lacking between defendant and the place searched, and that the affidavit contained misleading or false information, was based on hearsay, and was stale. This issue is preserved because defendant filed a motion to suppress the evidence in the trial court. *People v. Unger,*

14

278 Mich. App 210, 243; 749 NW2d 272 (2008). "A court's factual findings at a suppression hearing are reviewed for clear error, but the application of the underlying law—the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution—is reviewed de novo." *People v. Slaughter,* 489 Mich. 302, 310; 803 NW2d 171 (2011). We give great deference to a magistrate's finding of probable cause to issue a search warrant. *People v. Mullen,* 282 Mich. App 14, 21; 762 NW2d 170 (2008). We read the search warrant and the affidavit in a common-sense and realistic manner, *People v. Stumpf,* 196 Mich. App 218, 220; 492 NW2d 795 (1992), and presume that the affidavit supporting the search warrant is valid, *People v. Martin,* 271 Mich. App 280, 311; 721 NW2d 815 (2006).

The United States and Michigan Constitutions both guarantee every person the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Michigan Constitution is "construed to provide the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *Slaughter,* 489 Mich. at 311 (quotation marks and citations omitted).

We have reviewed the affidavit and conclude that there is a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found in defendant's apartment. *People v. Russo,* 439 Mich. 584, 604; 487 NW2d 698 (1992).

First, the affidavit provided sufficient facts to establish that the apartment searched was the scene of a criminal enterprise. The affiant noted in the affidavit that the CI made two controlled purchases from defendant, including one in defendant's apartment. Reading the search warrant and the affidavit in a common-sense and realistic manner, *Stumpf,* 196 Mich. App at 220, a reasonably cautious person could have concluded that there was a substantial basis that probable cause existed to find narcotics in defendant's apartment because one of the purchases occurred in defendant's apartment. See *People v. Martin,* 271 Mich. App 280, 298; 721 NW2d 815 (2006).

Next, we conclude that the warrant was not stale. We recognize that a search warrant must be supported by probable cause existing *at the time the warrant is issued. People v. Osborn,* 122 Mich. App 63, 66; 329 NW2d 533 (1982). The test for staleness is not whether there is recent information to confirm that a crime is being committed but whether probable cause is sufficiently fresh to presume that the sought items remain on the premises. *Id.* In determining whether the information is

15

stale, this Court also considers factors such as the nature of the property sought, the place to be searched, and the character of the crime, i.e., whether the crime is a single instance, or an ongoing pattern of protracted violations, [and] whether the inherent nature of a scheme suggests that it is probably continuing. *Russo,* 439 Mich. at 605–606.

Here, the second purchase by the CI occurred only one week before the warrant was issued. In addition, there were two controlled purchases, which is some evidence of an ongoing pattern of protracted violations. As further evidence, there was information in the affidavit that defendant was raising money to go down state to purchase a large quantity of narcotics, which is similarly indicative of an ongoing scheme of drug activity. Finally, the warrant in part authorized the search for records and documents related to the alleged sale of drugs as part of an ongoing drug business; under these circumstances, probable cause that those items would be in defendant's apartment was sufficiently fresh to presume that the sought items remained on the premises. *Id.* at 605.

Defendant next argues in both the brief filed by his attorney and his pro se brief that the warrant was invalid because the affiant had no personal knowledge of the facts and allegedly made material misrepresentations and false statements in the affidavit. First, we note that it was unnecessary for the affiant to have personal knowledge of the facts on which the warrant was sought because he informed the magistrate in the affidavit that he received information regarding the two controlled purchases from a fellow officer. *People v. Mackey,* 121 Mich. App 748, 753–754; 329 NW2d 476 (1982). It was appropriate for the court to consider credible the information about the controlled purchases received by the affiant from a fellow officer and this information was properly used as a basis for the warrant affidavit. *Id.*

Moreover, some of the facts in the affidavit were supplied by the fellow officer based on an independent police investigation; they were not just based on information supplied by the CI. *People v. Sellars,* 153 Mich. App 22, 27; 394 NW2d 133 (1986). Specifically, the affiant confirmed that defendant was on parole, living at the address to be searched, and that defendant was trying to get his parole officer to take him off a GPS tether. A fellow officer also informed the affiant that defendant was trying to make a drug run down state. Together, it could be concluded that defendant wanted the tether removed so that he could purchase the drugs down state without a tether tracking his movements. Further, the warrant in part authorized the search for records and documents related to the alleged sale of drugs as part of an ongoing drug business. A reasonably cautious person could have concluded, under the totality

of the circumstances, that there was a substantial basis for the magistrate's reliance on the information in the affidavit. *Mackey,* 121 Mich. App at 753–754. We note that, contrary to defendant's argument in his pro se brief, it was irrelevant whether the police had probable cause to obtain the search warrant absent the CI's allegations. Instead, the proper inquiry is whether there was a substantial basis for the magistrate's conclusion that there was a fair probability that contraband or evidence of a crime would be found in a particular place. *Russo,* 439 Mich. at 605.

Defendant also argues that the warrant was invalid because the affiant allegedly stated in the affidavit that he knew and had worked with the CI in the past, when he had not done so. Although the affiant's statement suggested that he was claiming that the CI was known to him, it is unclear from the affidavit whether the affiant was stating that he, his fellow officer, or both knew that the CI was reliable regarding information given in the past. Regardless, this argument has no merit. The information in the affidavit regarding the independent police investigation and controlled purchases was corroborating evidence that substantially verified the CI's information and provided support for a finding by the magistrate that the CI was reliable, or at the very least that the information was reliable. See *People v. Ulman,* 244 Mich. App 500, 509–510; 625 NW2d 429 (2001); *Sellars,* 153 Mich. App at 27. See also *People v. Poole,* 218 Mich. App 702, 706; 555 NW2d 485 (1996) ("A search warrant affidavit must provide sufficient facts from which a magistrate could find that the information supplied was based on personal knowledge and that *either* the unnamed person was credible *or* the information was reliable.").

Defendant argues in his pro se brief that the affiant intentionally disregarded the truth when he stated that defendant was seen at the second controlled purchase wearing a snowmobile jacket, which was listed in the affidavit as an item to be seized, asserting that police officers were unable to identify defendant as the seller. The information provided in the affidavit was not false. The CI identified defendant as the person from whom he bought the purported drugs during the second controlled purchase. One police officer testified at trial that while he could not be certain the person he saw was defendant coming out of the apartment building after the purchase, he identified the coat the person was wearing and that the person had the same height, build, and weight as defendant. In addition, another police officer identified the second voice on the audio recording, from the second purchase, as belonging to defendant. Under these facts, defendant is unable to establish that the search warrant was procured with allegedly false information because

17

> there is no evidence that affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–156, 171–172; 98 S Ct 2674; 57 L.Ed.2d 667 (1978).

*People v. Nolan*, No. 326970, 2016 WL 6127675, at *3–5.

Petitioner moved to suppress the evidence in the trial court. (ECF No. 9-10, PageID.233-244.) The transcript demonstrates that the trial court fully and thoughtfully considered Petitioner's motion to suppress. (*Id.*) The Michigan Court of Appeals thoroughly reviewed Petitioner's Fourth Amendment claims and determined that they lacked merit. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each

issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I

recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  July 17, 2021                                         /s/ *Maarten Vermaat*
                                                              MAARTEN VERMAAT
                                                              U.S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).